## COUNTY OF GWINNETT *vs.* DUNN.

In 41 *Ga.*, 225, it was held by a majority of the court, and in 54 *Ga.*, 25, it was held by a full bench, that an action did not lie against a county for damages caused by neglect of the proper authorities to repair a bridge, it not appearing that it was a toll-bridge, or such a one as was built by a contractor, and that there was a failure to take the proper bond of indemnity required by such sections as were applicable to the subject. This ruling could not be reversed by a majority of the court, but only by the unanimous opinion of a full bench upon leave granted to review it; and the present bench, not being unanimous, the former ruling must stand. Code, §217.

(*a.*) The decisions in 59 *Ga.*, 833; 64 *Id.*, 69, seem to have been made without any review of, or reference to, the former ruling of the court in 54 *Ga.*, 25, above cited. In each of them also there was a dissenting opinion.

(*b.*) Jackson, C. J., and Hall, J., are of the opinion that counties are liable for damages resulting from defective public bridges, wherever the proper authorities neglect the duties enjoined by law in

reference to the building of public bridges or keeping them in repair; and they are not prepared to hold that there is anything in the constitution and laws which would prevent the enforcement of a judgment obtained on account of an injury resulting from such a failure of duty. Blandford, J., adheres to the ruling in 41 *Ga.*, 225, and 54 *Id.*, 25, and is of the opinion that, under the present constitution, there is no mode of enforcing any judgment obtained against a county for damages.[*]

Judgment reversed.

September 16, 1884.

HALL, Justice.

[Mary Ann Dunn brought her action against the county of Gwinnett to recover damages for an injury alleged to have been sustained by reason of falling from a defective bridge in a public road of the county, over which she was driving.

On the trial, the evidence showed, in brief, as follows: The bridge originally had been built by private subscriptions, supplemented by certain amounts paid by the ordinary, who gave orders on the bridge fund therefor. It was not let out to the lowest bidder, nor was bond taken by the county. In the latter part of 1882 and early in 1883, the county commissioners passed an order that the bridge was in a dangerous condition, and authorized the chairman to contract for a new one. He made a contract to repair it. (The contractor says he repaired it; the order passed by the board for payment says, "for putting bridge at town bridge.") No bond was required or taken. The contractor put no railing around the bridge, and to this the accident was attributable.

There was other evidence, as to the details and nature of the injury, not material here.

The jury found for the plaintiff $200.00. Defendant moved for a new trial, on the following among other grounds:

[*]See *Moreland vs. Troup County,* 70 *Ga.*, 714.

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court refused to charge as follows: "Unless the bridge, at which the injury was sustained by the plaintiff, was a toll-bridge, set up by the county, or was a bridge built by the county under a contract with the builder, or was built by the county by hiring hands, or in any other way, then the county would not be liable to plaintiff for any injury she may have sustained by reason of the unsafe condition of such bridge."

(3.) Because the court charged as follows: "If the county undertakes to keep a county bridge in repair, whether it built it by contract or by hiring hands or in any other way, provided it adopts it as part of the public highway, it is its duty to put it in such condition as to render it reasonably safe as a cross-way for persons traveling over it; and if the county so adopts it and undertakes to keep it in repair, plaintiff would be entitled to recover against the county damages on account of injuries sustained by neglect of their duties, unless plaintiff herself was at fault."

The motion was overruled, and defendant excepted.]